UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT COLE,

              Plaintiff,                                    Hon. Ellen S.  Carmody

v.

                                            Case No. 1:10-cv-1037

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

_____/


**OPINION**

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act.  On January 3, 2011, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (Dkt. #11).

       Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 54 years old at the time of the ALJ's decision.  (Tr. 22, 100).  He earned an Associate's Degree and worked previously as a medical assistant, Certified Nurse's Aide, and attendant care worker.  (Tr. 20, 106-11, 130-35).

Plaintiff applied for benefits on November 21, 2005, alleging that he had been disabled since November 5, 2000, due to depression, anxiety, and high blood pressure.  (Tr. 100-05, 154).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 23-99).  On March 25, 2008, Plaintiff appeared before ALJ James Prothro with testimony being offered by Plaintiff and vocational expert, John Petrovich.  (Tr. 569-615).  In a written decision dated June 17, 2009, the ALJ determined that Plaintiff was not disabled.  (Tr. 12-22).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 4-8).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On October 4, 2005, Plaintiff was examined by Richard King, Ed.D.  (Tr. 204-08).  Plaintiff reported experiencing depression.  (Tr. 205).  Specifically, Plaintiff reported "that he was

3

incarcerated for several years beginning in 1979" for "raping a woman." (Tr. 205). Plaintiff reported

that, "I still have trouble dealing with it" and "I'm depressed about the way things are going in my

life." (Tr. 205, 207). Plaintiff also reported "that he has had other criminal problems and served

time for other things, too." (Tr. 205).

Plaintiff participated in IQ testing, the results of which revealed that he possessed a

verbal IQ of 77, a performance IQ of 89, and a full scale IQ of 80. (Tr. 206). Dr. King noted that

Plaintiff's performance "places him in the lowest limits of the low average range of intelligence,"

but that Plaintiff's "intellectual capabilities do reflect skills sufficient enough for him to be

successful in immediate job placement." (Tr. 206). The doctor diagnosed Plaintiff with major

depressive disorder, generalized anxiety disorder, history of alcohol abuse, and borderline

intellectual functioning. (Tr. 208). The doctor further noted that Plaintiff "is an individual who

should be involved in outpatient counseling intervention related to his significant emotional

dysfunctions" and "needs to deal with his long-term history of guilt, as well as other depression

dynamics, which are not clearly defined." (Tr. 207).

On December 12, 2005, Plaintiff reported that he prepares meals, shovels snow,

cleans, and "help[s] out with chores." (Tr. 114-16). Plaintiff also reported that he watches

television, reads magazines, talks on the telephone, and "go[es] places." (Tr. 114, 118).

On January 10, 2006, Dr. John Pai completed a Psychiatric Review Technique form

regarding Plaintiff's mental limitations. (Tr. 255-68). The doctor determined that Plaintiff satisfied

the Part A criteria for Section 12.02 (Organic Mental Disorders), Section 12.04 (Affective

Disorders), Section 12.06 (Anxiety-Related Disorders), and Section 12.09 (Substance Addiction

Disorders) of the Listing of Impairments. (Tr. 255-64 ). The doctor determined, however, that

4

Plaintiff failed to satisfy any of the Part B criteria for these particular Listings. (Tr. 265). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (Tr. 265). As for whether Plaintiff ever experienced episodes of decompensation, the doctor concluded that there existed "insufficient evidence" to render an opinion. (Tr. 265).

Dr. Pai also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 251-54). Plaintiff's abilities were characterized as "moderately limited" in six categories. (Tr. 251-52). With respect to the remaining 14 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 251-52).

On February 15, 2006, Plaintiff was examined by Dr. Tama Abel. (Tr. 269-74). Plaintiff reported that he was experiencing high blood pressure, depression, and anxiety. (Tr. 269). Plaintiff reported that he "is able to perform his activities of daily living without assistance" and, furthermore, is able to drive, prepare meals, shop, wash laundry, vacuum, clean, dust, and mow the lawn. (Tr. 269-70). Plaintiff also reported that he "likes to watch television and visit friends." (Tr. 270). Plaintiff reported that he can sit for 30 minutes, stand for 30 minutes, walk three blocks, and lift 20 pounds. (Tr. 270).

The results of a mental status examination were unremarkable. (Tr. 270). The results of a physical examination were likewise unremarkable. (Tr. 270-73). The doctor diagnosed Plaintiff with uncontrolled hypertension, but further reported that "it is not expected that this condition would

affect his ability to perform basic work related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking or traveling." (Tr. 274). With respect to Plaintiff's reported depression and anxiety, Dr. Abel reported that "the current medical regimen for this condition appears to be working well" and "it is not expected that this condition would affect his ability to perform basic work related activities." (Tr. 274).

On February 16, 2006, Plaintiff was examined by Psychiatrist Dr. Dhanu Mahesh. (Tr. 461). Plaintiff reported that he was experiencing depression, anxiety, and difficulty sleeping. (Tr. 461). The doctor observed that Plaintiff was not presently taking his medication. (Tr. 461).

On June 29, 2006, Plaintiff was examined by Dr. Mahesh. (Tr. 460). Plaintiff reported that "he is taking his medications" and "is doing much better." (Tr. 460). Plaintiff reported that he was neither drinking nor engaging in substance abuse and was sleeping better. (Tr. 460). On September 25, 2006, Plaintiff was examined by Dr. Mahesh. (Tr. 459). Plaintiff reported that "he is attending therapy" and "is doing fairly well." (Tr. 459).

On January 2, 2007, Plaintiff reported to a clinic complaining of high blood pressure. (Tr. 290). Plaintiff reported that he had not taken his blood pressure medication that morning. (Tr. 290). Plaintiff was provided "a dose of medication" at the clinic and then instructed to go "to the emergency department for further care and evaluation." (Tr. 290). Treatment notes completed by the emergency department reveal that Plaintiff was "completely asymptomatic." (Tr. 290).

On January 25, 2007, Plaintiff participated in a CT scan of his head, the results of which were "negative." (Tr. 414). On January 31, 2007, Plaintiff participated in an echocardiograph examination the results of which revealed the following: (1) left ventricular hypertrophy; (2) normal left ventricular systolic function; (3) right ventricular hypertrophy; (4) mild mitral regurgitation; and

(5) mild tricuspid regurgitation.  (Tr. 429-30).  On February 26, 2007, Plaintiff participated in an angiogram examination of his renal system the results of which were "negative" with "no evidence for renal artery stenosis."  (Tr. 437).

On March 10, 2007, Plaintiff reported to the emergency room.  (Tr. 443).  Plaintiff reported that he was experiencing "eye pain" and "difficulty seeing out of the right eye."  (Tr. 443).  Plaintiff reported that he had not taken his Cosopt[1] medication for the past month and had not taken his Xalatan[2] medication for the past week.  (Tr. 443).  Plaintiff's blood pressure "was normal."  (Tr. 443).  Plaintiff was diagnosed with glaucoma and informed that "he most likely is permanently blind in the right eye at this point due to the lack of medication and progression of his glaucoma."  (Tr. 444).  Plaintiff was provided Cosopt and Xalatan and discharged home in satisfactory condition.  (Tr. 444).  Plaintiff was also instructed to follow up with Grand River Ophthalmology.  (Tr. 444).

Following a March 20, 2007 examination, Dr. Mahesh reported that Plaintiff "is doing well" and "is currently stable on his medications."  (Tr. 457).

On January 10, 2008, Dr. Kenyon Kendall, with Grand Rapids Ophthalmology, reported that Plaintiff had experienced "total loss of vision" in his right eye as well as a "loss of stereoscopic vision."  (Tr. 517).  As for whether Plaintiff's vision "pose[d] a risk that [Plaintiff] could not avoid hazard in the work place," the doctor reported that it "depends on [the] work involved."  (Tr. 517).

---

[1] Cosopt is used to treat certain types of glaucoma and other causes of high pressure inside the eye.  *See* Cosopt, available at http://www.drugs.com/cosopt.html (last visited on March 16, 2012).  Cosopt reduces the amount of fluid in the eye, which decreases pressure inside the eye.  *Id.*

[2] Xalatan is used to treat certain types of glaucoma and other causes of high pressure inside the eye.  *See* Xalatan, available at http://www.drugs.com/xalatan.html (last visited on March 16, 2012).  Xalatan reduces pressure in the eye by increasing the amount of fluid that drains from the eye.  *Id.*

### ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v.*

---

[3] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) visual impairment of the right eye; (2) glaucoma; (3) hypertension; (4) borderline intellectual functioning; (5) depression; and (6) generalized anxiety disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 14-16).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[4] subject to the following limitations: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) he can sit for six hours during an 8-hour workday; (3) he can push/pull 20 pounds occasionally and 10 pounds frequently; (4) he can occasionally climb ramps and stairs; (5) he can never climb ladders, ropes, or scaffolds; (6) he can occasionally stoop, kneel, and crouch; and (7) he must avoid all exposure to heights and hazardous machinery. (Tr. 16). The ALJ further observed that Plaintiff is blind in the right eye, but has "useful vision" in the left eye. (Tr. 16). With respect to Plaintiff's non-exertional limitations, the ALJ determined that Plaintiff was moderately limited in the following areas: (1) understanding, remembering, and carrying out detailed instructions; (2) completing a normal work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (3) accept instructions and respond

---

[4] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

appropriately to criticism from supervisors; and (4) respond appropriately to changes in the work setting. (Tr. 16). The ALJ also found that Plaintiff was limited to only occasional contact with the general public. (Tr. 16).

The ALJ concluded that Plaintiff was unable to perform any of his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert John Petrovich.

The vocational expert testified that there existed approximately 127,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 604-07). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

10

a.      The ALJ Properly Evaluated the Medical Evidence

Plaintiff asserts that the ALJ failed to accord controlling weight to certain opinions expressed by Dr. Wagner and Dr. Mahesh, two of his treating physicians.   The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).   An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'"  *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).   The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Wilson*, 378 F.3d at 544.   In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion,

11

(4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

On February 12, 2008, Dr. Wagner and Dr. Mahesh completed an assessment of Plaintiff's "ability to do mental work-related activities." (Tr. 533-35). In the realm of "making occupational adjustments," the doctors reported that Plaintiff suffered from "extreme limitations"[5] in the following areas: (1) relate to coworkers; (2) deal with the public; (3) interact with supervisors; (4) deal with work stresses; and (5) maintain attention/concentration. (Tr. 533). In the realm of "making performance adjustments" the doctors reported that Plaintiff suffered from "extreme limitations" in his ability to understand, remember and carry out "complex job instructions." (Tr. 533). In the realm of "making personal/social adjustments" the doctors reported that Plaintiff suffered from "extreme limitations" in the following areas: (1) behave in an emotionally stable manner; (2) relate predictably in social situations; and (3) demonstrate reliability. (Tr. 534). In the realm of "functional limitations," the doctors reported that Plaintiff suffered from "extreme limitations" in the following areas: (1) restriction of activities of daily living; (2) difficulties in maintaining social functioning; and (3) difficulties in maintaining concentration, persistence or pace. (Tr. 534). Finally, the doctors reported that Plaintiff had experienced "four or more...episodes of

---

[5] The form utilized by Dr. Wagner and Dr. Mahesh defined the term "extreme" as "a degree of limitation that is incompatible with the ability to do any gainful activity." (Tr. 533).

decompensation each of extended duration." (Tr. 534).

      The ALJ was "not persuaded" by the doctors' opinions. (Tr. 19). As the ALJ observed, the opinion in question was in stark contrast to contemporaneous treatment notes regarding Plaintiff's treatment. (Tr. 462-96, 536-39). As the ALJ further observed, "the person discussed in [the February 12, 2008] report does not appear to be the same individual discussed in the progress notes." (Tr. 19). The medical evidence reveals that when Plaintiff took his medications as prescribed he retained the ability to perform work activity consistent with the ALJ's RFC determination. The opinion by Dr. Mahesh and Dr. Wagner that Plaintiff suffered from "extreme" limitations in almost every realm of functioning enjoys no support in the record. The ALJ's rationale for discounting the opinion in question is sound and is supported by substantial evidence.

      b.    The ALJ Properly Discounted Plaintiff's Subjective Allegations

      At the administrative hearing, Plaintiff testified that he was impaired to an extent beyond that recognized by the ALJ. Specifically, Plaintiff testified that he experienced "two or three" panic attacks weekly. (Tr. 591-94). Plaintiff reported that as a result of depression and fatigue he has "no ambition" and is unable to work. (Tr. 595-97). Noting that the medical evidence failed to support Plaintiff's allegations of extreme limitation, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 20). Plaintiff asserts that the ALJ's credibility assessment is erroneous because the ALJ failed to consider an affidavit submitted by Plaintiff's wife. (Tr. 143-45).

      As the Sixth Circuit has long recognized, "pain alone, if the result of a medical

impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th

Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29,

2002) (same).   As the relevant Social Security regulations make clear, however, a claimant's

"statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20

C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th

Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed.

Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, as the Sixth Circuit has established, a claimant's

assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the
> alleged pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan*

standard.  *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July

29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may

support a finding of disability only where objective medical evidence confirms the severity of the

alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).

However, where the objective medical evidence fails to confirm the severity of a claimant's

subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to

resolve the significant conflicts in the administrative record."  *Workman*, 105 Fed. Appx. at 801

(citing *Walters*, 127 F.3d at 531).

14

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As discussed above, the medical record, including Plaintiff's reported activities, simply fails to support Plaintiff's allegations of extreme work preclusive limitations. In her affidavit, Plaintiff's wife makes several vague assertions regarding Plaintiff's alleged inability to work. (Tr. 143-45). Such assertions are not supported by the record and, moreover, concern a matter reserved exclusively to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1) (determination of disability is a matter left to the commissioner). The Court also notes that the affidavit in question was executed on October 6, 2006, which, as discussed above, predates evidence from one of Plaintiff's treating physicians that Plaintiff was "doing well" and was "stable on his medications." As the affidavit in question is not supported by the record, the Court discerns no error in the ALJ's failure to specifically discuss such.

Moreover, as the ALJ's rationale for discounting Plaintiff's subjective allegations is supported by substantial evidence in the record, the Court discerns no error in the ALJ's decision to discount Plaintiff's subjective allegations of pain and limitation. *See Norris v. Commissioner of*

15

*Social Security*, 2012 WL 372986 at *4-5 (6th Cir., Feb. 7, 2012) (where the ALJ "did not misconstrue facts in the record or overlook other significant evidence. . .and identified specific facts supported by the record" which to "a reasonable mind" would "cast doubt on" a claimant's subjective allegations, the ALJ's decision to discount the claimant's credibility is not in error).

c.      The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question.  While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).  The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 127,000 such jobs.  The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert.  The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

d.      Plaintiff is not Entitled to a Remand

Finally, as part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ.  (Tr. 540-62).  The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination.  This Court, however, is precluded from considering such

material.  In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit

indicated that where the Appeals Council considers new evidence that was not before the ALJ, but

nonetheless declines to review the ALJ's determination, the district court cannot consider such

evidence when adjudicating the claimant's appeal of the ALJ's determination.  *Id.* at 148; *see also*,

*Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

   If Plaintiff can demonstrate, however, that this evidence is new and material, and that

good cause existed for not presenting it in the prior proceeding, the Court can remand the case for

further proceedings during which this new evidence can be considered.  *Cline*, 96 F.3d at 148.  To

satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that

the Commissioner would have reached a different result if presented with the new evidence.

*Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).  Plaintiff

bears the burden of making these showings.  *See Hollon ex rel. Hollon v. Commissioner of Social

Security*, 447 F.3d 477, 483 (6th Cir. 2006).

   First, Plaintiff has not requested that the Court remand this matter for consideration

of this evidence.  Plaintiff has, therefore, waived any such argument.  *See, e.g., Porzillo v.

Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010)

(claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting,

Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived);

*Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D.

Mass., Nov. 18, 2010) (same).  Second, it is not reasonable to conclude that consideration of this

evidence would have resulted in a different outcome.  The evidence in question neither calls into

question the ALJ's determination nor bolsters Plaintiff's arguments in support of his appeal.

Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.


Date:  March 20, 2012                     /s/ Ellen S. Carmody
                                         ELLEN S. CARMODY
                                         United States Magistrate Judge

18